UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-80939-MIDDLEBROOKS/Matthewman

ROBIN SCHUGAR,

    Plaintiff,

v.

SOUTH UNIVERSITY OF FLORIDA-MEMBER,
LLC, a Florida Limited Liability Company,

    Defendant.

_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE comes before me on Defendant's Motion to Dismiss ("Motion") (DE 3), filed August 9, 2024. Plaintiff has responded to the Motion (DE 7), and the matter is fully ripe for review. For the following reasons, I will partially grant and partially deny the Motion.

I. **BACKGROUND**

This is an employer-employee retaliation dispute related to Plaintiff's termination from Defendant's workplace in November 2022. Plaintiff originally filed her suit in state court in February 2024. (DE 1-2 at 11). She later revised her complaint while still in that forum after Defendant filed a Motion to Dismiss which was granted (without prejudice) by the state court judge. (DE 1-2 at 87). Plaintiff's Amended Complaint is the pleading considered in this Order. (DE 1-2 at 88-97). Defendant removed the case to federal court on August 2, 2024 and Plaintiff did not contest the removal. (DE 1).

In her amended pleading, Plaintiff, a Jewish woman, alleges that Defendant, her former employer, wrongfully retaliated and terminated her after she corroborated a colleague's complaint

to management about ethnic/racial harassment of the colleague by a mutual workplace manager. (DE 1-2 at 89). Plaintiff was employed as a "Assistant Program Director for [Defendant's] Physician Assistant Program" from March 2020 through her termination on November 18, 2022. (DE 1-2 at 89).

Plaintiff alleges that she witnessed her colleague, Caroline Kamel being subject to workplace harassment related to Ms. Kamel's Egyptian background from her manager Ilaria Gadalla. (*Id.*). Unbeknownst to Plaintiff, Ms. Kamel listed Plaintiff as a reference for an investigation of Gadalla conducted by Defendant's Human Resources department in October 2022. (DE 1-2 at 90). Plaintiff alleges that she responded truthfully to Human Resources' inquiries during the investigation about Ms. Gadalla's actions and that she was later punished by Gadalla for confirming the discrimination and harassment she witnessed of Kamel. (*Id.*). Plaintiff alleges that Defendant's CEO, Cindy Manjounes was present for Plaintiff's interview with Human Resources and that Plaintiff had a good faith belief that Ms. Kamel was the victim of discrimination and harassment perpetrated by Gadalla. (DE 1-2 at 91).

Shortly thereafter, Plaintiff alleges that Gadalla, with full knowledge of Plaintiff's participation in the investigation against her, began a "campaign of retaliatory harassment against Plaintiff." (DE 1-2 at 91). The campaign included misleading Plaintiff's superiors on Plaintiff's job performance, refusing to openly and freely share her concerns or input on Plaintiff's work product or job performance, and not authorizing Plaintiff a work laptop to be able to work remotely during critical stretches where several days of on-site availability were lost due to hurricanes and other reasons. (*Id.*). Plaintiff alleges that she soon realized that Gadalla had begun this campaign to mislead her superiors of Plaintiff's job performance in order to get Plaintiff fired. (*Id.*). Thus,

Plaintiff emailed Human Resources on November 14, 2022, indicating that she wanted to file a complaint against Gadalla for her retaliatory acts and asked for a meeting. (DE 1-2 at 92).

The meeting, held on November 15, 2022 was unsuccessful for Plaintiff. She alleges Gadalla had anticipated Plaintiff's reporting to HR, and used the meeting to "level frivolous allegations against Plaintiff" without allowing her the opportunity to present her allegations against Gadalla. (*Id.*). Plaintiff was then told by her manager that she had been put on administrative leave, and that Gadalla and the Human Resources representative had recommended her discharge. (*Id.*). Plaintiff alleges that she had never received any previous warnings that her job was in jeopardy and that to that point, she had always received favorable and positive evaluations. (*Id.*).

On November 21, 2022, Plaintiff received a copy of the letter terminating her effective November 18, 2022 without any discussion of the items for which she was allegedly placed on leave. (DE 1-2 at 93). Plaintiff does not attach a copy of this letter to her Amended Complaint.

Based on the preceding events, Plaintiff also alleges that she was discriminated against because of her ethnicity as a Jewish person. (DE 1-2 at 95). Plaintiff alleges that despite Ms. Kamel's complaints against Gadalla, neither Kamel, nor other employees of Defendant who were not Jewish were terminated nor put on final written warnings like Plaintiff was. (*Id.*). Plaintiff adds that numerous non-other Jewish employees have committed far more serious violations over extended periods of time than she had, and they were only disciplined and were never terminated for the first allegation of a rule violation. (DE 1-2 at 96). Plaintiff also alleges that Gadalla and Manjounes themselves intentionally discriminated against Plaintiff based upon her status as a Jewish person. (*Id.*).

Thus, Plaintiff alleges that she was discriminated against because she is Jewish and that Defendant's CEO Cindy Manjounes purposefully and intentionally discriminated against Plaintiff based upon this fact when she discharged Plaintiff from employment. (DE 1-2 at 95).

For these series of events, Plaintiff brings two counts against Defendant: Retaliation Pursuant to the Florida Civil Rights Act ("FCRA") (Count I) and Discrimination Termination in Violation of [42] U.S.C. § 1981 (Count II).

Defendant filed its Motion to Dismiss seeking to dismiss this suit against it for two reasons. First, Plaintiff's FCRA count fails because she did not engage in a lawfully protected activity. Second, Plaintiff did not meet the pleading standard to state a claim for discrimination under 42 U.S.C. § 1981 because she did not allege that her (Jewish) ethnicity was the but-for cause of her termination. As Plaintiff previously had the opportunity to amend her Complaint in state court, Defendant asks that I dismiss this case with prejudice. I discuss the merits below.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing legal sufficiency, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must ... contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cty. Bd. of Educ. V. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and assume the truth of the plaintiff's factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purposes of determining whether a claim is legally sufficient). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level." *Id.*

## III. DISCUSSION

### A. FCRA (Count I)

Defendant argues that Plaintiff's retaliation claim under the FCRA fails because merely participating in an internal investigation is not a protected activity under the statute. Moreover, Defendant argues that Plaintiff has failed to adequately allege that she opposed an unlawful employment practice under the law. Plaintiff argues that she has stated a claim because she has pled facts establishing protected conduct under the FCRA. (DE 7 at 1-3). For the following reasons, I find that Plaintiff has sufficiently state a claim under the FCRA.

The retaliation provision of the FCRA provides:

> It is unlawful employment practice for an employer…to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

5

Fla. Stat. s. 760.10(7).

"Because this provision of the FCRA is almost identical to its [Title VII] federal counterpart, 42 U.S.C. § 2000e–3(a), Florida courts follow federal case law when examining FCRA retaliation claims." *Carter v. Health Management Associates*, 989 So.2d 1258, 1262 (Fla. 2d DCA 2008). That is "because the Florida act was patterned after Title VII." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

In order to state a prima facie case of retaliation under the FCRA, a plaintiff must show that 1) she engaged in statutorily protected expression, 2) she suffered an adverse employment action, and 3) the adverse action was casually related to the protected expression. *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006). Thus, Defendant attacks prong one of this test, whether Plaintiff has adequately pled that she was engaged in statutorily protected expression.

"Under Title VII and the FCRA there are two categories of protected activity: those activities that fit under the 'opposition clause' of 42 U.S.C. § 2000e–3(a) and those activities that fit under the 'participation clause.'" *Bourne v. School Bd. of Broward Cnty.*, 508 Fed. Appx. 907, 910 (11th Cir. 2013) (citing *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997)); *see* 42 U.S.C. § 2000e–3(a)-(b) (not permitting discrimination based on race, color, religion, sex, or national origin). Under the opposition clause, "an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by this subchapter.'" *Hinton v. Supervision Intern., Inc.*, 942 So.2d 986, 990 (Fla. 5th DCA 2006) (quoting 42 U.S.C. § 2000e–3(a)). And under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.*

6

(again quoting 42 U.S.C. § 2000e–3(a)). Defendant argues that Plaintiff has failed to state a cause of action pursuant to either the participation or opposition clause. (DE 3 at 3-6).

### 1. Participation Clause

Under the participation clause, in order for Plaintiff to establish a *prima facie* case of retaliation, in addition to filing formal charges with the Equal Employment Opportunity Commission (EEOC) or its designated representative (such as the Florida Commission of Human Relations or the Florida Commission of Human Rights), Plaintiff is required to plead the three-step test outlined above: 1) a statutorily protected expression, 2) an adverse employment action, and 3) a causal connection between the participation in the protected expression and adverse action. *Hinton*, 942 So.2d at 990.

Defendant contends that in order for Plaintiff's actions to fall under the participation clause, she must have filed her charge with the EEOC or the Florida Commission of Human Rights ("FCHR") *at least in conjunction with, or before* she was retaliated at work because "[t]he FCRA's participation clause 'protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the [FCHR].'" *Carter*, 989 So.2d at 1264 (quoting *E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000)). "At a minimum, some employee must file a charge with the EEOC (or [the FCHR]) or otherwise instigate proceedings under the statute for the conduct to come under the participation clause." *E.E.O.C.*, 221 F.3d at 1174 n.2 (quoting *Johnson v. University of Cincinnati*, 215 F.3d 561, 581 (6th Cir. 2000)) ("To establish a claim of retaliation under the participation clause, Plaintiff must make a prima facie case by showing that Defendants discharged him because he filed a claim with the EEOC.").

Plaintiff does not address these arguments that she must have filed a complaint with the appropriate agency before she was terminated, nor does she attempt to distinguish the caselaw

from her case. In fact, taking Plaintiff's facts alleged in her Complaint as true, it would initially appear that this caselaw does not apply to Plaintiff. Plaintiff alleges that she filed a complaint with the FCHR on or about August 23, 2022, which predated her termination in November 2022. (DE 1-2 at 88). This fact, however, raises a curious conundrum. The events that gave rise to this suit occurred in or around October/November 2022. (DE 1-2 at 90, 94). Thus, one of the following must be true: 1) Plaintiff's complaint filed with the FCHR cannot possibly be based on the events that give rise to this suit, or 2) Plaintiff has a scrivener's error in her Complaint and she meant to include another date, perhaps August of 2023 instead of August 2022.

Regardless, Plaintiff does not dedicate any of her Response briefing to this issue, aside from arguing that *E.E.O.C.* was decided at the summary judgment stage and was inapplicable to her case, a fact that misses the mark. Having not addressed the merits of Defendant's argument, I presume that she agrees that she cannot pursue her claim under the participation clause if she did not file her complaint with the FCHR until she was about to be, or had already been terminated.

### 2. Opposition Clause

Although she does not specifically classify her arguments as being so, Plaintiff devotes her Response briefing to arguing that she has stated a claim under the opposition clause. Under the opposition clause, "an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by this subchapter.'" *Hinton*, 942 So.2d at 990 (quoting 42 U.S.C. § 2000e–3(a)). Opposition claims can include both the filing of formal charges of discrimination to informally protesting discriminatory employment practices including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers

who have filed formal charges. *Carter*, 989 So.2d at 1263; see *also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (cited for proposition by *Carter*).

Defendant argues that Plaintiff has failed to state a claim under the opposition clause because her email to Human Resources that she wanted to file a complaint against Gadalla do not constitute a protected activity to state a FCRA claim.[1] (DE 3 at 5). Defendant also argues that Plaintiff's cooperation in the internal investigation started by Ms. Kamel against Gadalla was not a formal charge of discrimination and more importantly, Plaintiff only played a passive role in corroborating facts by not voicing her personal opposition to Gadalla's conduct during the investigation. Therefore, Defendant concludes that Plaintiff's participation and statements in the investigation are not protected activities under Title VII. (*Id.* at 6). I disagree.

"The causal connection between the protected activity and the adverse employment action can be established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct or directly through evidence of retaliatory animus." *Sumner*, 899 F.2d at 209. "Title VII is violated if a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause, and if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the discharge. *Id.*

As I stated above, opposition claims range from the filing of formal charges of discrimination to more informal protests which can include expressing support of co-workers and

---

[1] Defendant does not contest either prongs 2 or 3, that Plaintiff suffered an adverse employment action, or whether there was a causal connection between the participation in the protected expression and the adverse action. Thus, I do not analyze those issues in this Order. *Hinton*, 942 So.2d at 990.

9

making complaints to management. *Carter*, 989 So.2d at 1263. Here, Plaintiff alleges that she expressed support of Ms. Kamel during her reported ethnic harassment at the hands of Gadalla. She did so by mentoring Ms. Kamel after she experienced abuse, and by relaying the discriminatory acts she witnessed firsthand between the two women to management. (DE 1-2 at 90). Plaintiff had no legal duty to do either act but she still did, presumably to support her colleague.

Additionally, Plaintiff made a complaint to management of her own mistreatment she was receiving at the hands of Gadalla via a November 14, 2022 email she sent to Human Resources. (DE 1-2 at 92). It makes no difference that at the meeting on November 15, 2022, Plaintiff may not have been able to fully flesh out her grievances against Gadalla. Plaintiff had already made clear via her email that she wanted to report the retaliatory acts of her manager against her for supporting her colleague's ethnic harassment claim, and she was promptly terminated a few days later. Plaintiff has also properly alleged the causal link between the protected activity and her termination because she alleges that Gadalla began to mislead Plaintiff's superiors about Plaintiff's job performance and subjected her to difficult work conditions only after Plaintiff testified in support of Kamel's ethnic/racial harassment claims against Gadalla. And Plaintiff alleges that this mistreatment led to Plaintiff's firing in short proximity thereafter.

I am not convinced by Defendant's citation to *Cheatham v. DeKalb Cnty., Georgia*, 682 Fed. Appx. 881, 886 (11th Cir. 2017) for the proposition that a plaintiff's participation in an employer's internal investigation cannot constitute a protected activity under Title VII's participation clause. That case specifically wrote that the reason plaintiff failed to state a claim for participating in the county's in-house investigation of the fire department was because the investigation dealt with whether one of Plaintiff's co-workers had placed onions in her co-worker's

10

meal knowing he was allergic to onions, which is not a protected activity under Title VII. *Id.* The court specifically noted that plaintiff could have relied on her participation in the internal investigations had plaintiff "reasonably believed" that her employer was engaged in unlawful employment practices under Title VII, such as sex discrimination. *Id.*

In the present case, Plaintiff clearly believed that her employer was engaged in national origin discrimination, and she played a role in the in-house investigation by corroborating Ms. Kamel's claims. Plaintiff's case is distinguishable from the facts of *Cheatham*. Reading the Amended Complaint in the light most favorable to Plaintiff, she has sufficiently alleged an FCRA opposition clause claim against Defendant at this stage. Accordingly, I deny Defendant's Motion to Dismiss Count I.

**B.   42 U.S.C. § 1981 (Count II)**

To state a racial discrimination claim under 42 U.S.C. § 1981, a plaintiff must allege (1) intentional racial discrimination and (2) that caused a contractual injury. *Ziyadat v. Diamondrock Hospitality Company*, 3 F.4th 1291, 1298 (11th Cir. 2021) (citing *Comcast Corporation v. National Association of African American-Owned Media*, 589 U.S. 327, 341 (2020) and *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004)). "A contractual injury includes any injury relating to "the making, performance, modification, or termination of the contract, or to the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* (cleaned up) (quoting 42 U.S.C. § 1981(b)). Here, Defendant challenges the second prong of the test above: whether Plaintiff has sufficiently alleged that her (Jewish) ethnicity was the but-for cause of her contractual injury (termination of her employment), when it was only a substantial motivating factor. I agree that Plaintiff has failed to allege a racial discrimination claim under § 1981.

"To prevail, a plaintiff *must initially plead* and ultimately provide that, but for race, it would not have suffered the loss of a legally protected right [under 42 U.S.C. § 1981.]" *Comcast Corporation v. National Association of African American-Owned Media*, 589 U.S. 327, 341 (2020) (emphasis added). In the Eleventh Circuit, in the Section 1981 "but-for" causation context, courts ask "whether the discriminatory conduct had a 'determinative influence' on the [contractual] injury." *Ziyadat*, 3 F.4th at 1298 (11th Cir. 2021) (citing *Comcast* and discussing the but-for causation test at the motion to dismiss stage in a Section 1981 suit for race discrimination).

This case implicates the "cat's paw" theory of liability, where a defendant may be held liable for the racial animus of its non-decision-making employee, when as alleged here, that employee's discriminatory conduct causes a decision-making employee to take an injurious action against the plaintiff. *Ziyadat*, 3 F.4th at 1298. Here, where Plaintiff alleges that her termination by Manjounes (the decision-making employee) was pre-dated and caused by Gadalla's animus against her, Plaintiff must allege that the "lower-level employee's [racial] animus was a 'but-for' cause of, or a determinative influence on, the decisionmaker's ultimate decision." *Id.* (citing *Sims v. MVM, Inc.*, 704 F.3d 1327, 1337 (11th Cir. 2013)).

Here, that standard has not been met because Plaintiff has not sufficiently alleged that her Jewish identity was the but-for cause of the retaliation she experienced at the hands of Gadalla. Even viewing the allegations and facts in the light most favorable to Plaintiff at this stage that "Plaintiff was discriminated against *because of* her ethnicity as a Jewish person," and that Defendant's CEO "purposefully and intentionally discriminated against Plaintiff based upon her Jewish descent when she discharged Plaintiff from employment" (DE 1-2 at 95), the alleged facts tell a different story.

12

Gadalla is alleged to have started her mistreatment campaign against Plaintiff not because of her race, but because Plaintiff corroborated Ms. Kamel's story to Human Resources about Gadalla's racial discrimination of Kamel. (DE 1-2 at 93). Plaintiff then alleges that Gadalla began to subject her to adverse treatment within the workplace that culminated in a Human Resources meeting where she was ultimately fired by Manjounes. Nowhere in the chain of events is Plaintiff's Jewish identity mentioned until Plaintiff's Section 1981 count, where Plaintiff alleges in a conclusory manner that she was racially discriminated against by both Manjounes and Gadalla because of her status, pointing to how other non-Jewish employees who performed worse than her were not subject to termination. (DE 1-2 at 96).

"When the intentionally discriminating employee does not herself have decision-making authority, the plaintiff must plausibly allege that the discriminating employee's racial animus (1) was intended to cause and (2) did cause the contractual injury." *Ziyadat*, 3 F.4th at 1297. Although at this stage I must view the facts alleged in the light most favorable to the Plaintiff, I cannot conclude that Plaintiff's Jewish status caused her termination that began with Gadalla's adverse treatment of her. Aside from a single conclusory line that Gadalla and Manjounes discriminated against her based on her Jewish status, Plaintiff's alleged facts point to her corroboration of Kamel's experiences as the real reason for the retaliation she experienced in the workplace. Therefore, Count II is subject to dismissal insofar as it sought to raise a claim of racial discrimination under 42 U.S.C. § 1981.

However, although Count II fails on a racial discrimination theory, my independent review of the facts leads me to conclude that Plaintiff has sufficiently pled a claim for retaliation under 42 U.S.C. § 1981. The elements for such a claim are similar, but distinct.

"To establish a prima face claim of retaliation under 42 U.S.C. § 1981, a plaintiff must show that "(1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Tucker v. Talladega City Schools*, 171 Fed.Appx. 289, 296 (11th Cir. 2006) (cleaned up). Plaintiff alleges that she corroborated an account of racial discrimination of another employee, giving evidence to her superiors about the event. *See* 42 U.S.C. § 1981 ("All persons…shall have the same right….to make and enforce *contracts*, to sue, be parties, *give evidence*…") (emphasis added). She alleges that Gadalla and Manjounes retaliated against her by subjecting her to an adverse work environment, and eventually terminating her. And finally, Plaintiff has pled that this conduct was causally related to her initial corroboration of Ms. Kamel's discrimination.

I note that Plaintiff sought leave to amend her Complaint to add facts to bolster her § 1981 race discrimination claim. Although I have dismissed her § 1981 claim on this theory under which it was pled, I will grant her request to amend her Complaint one final time to add facts to show why she believes race was the but-for causation of her termination as outlined in this Order. Plaintiff may also choose to reframe her § 1981 claim under a theory of retaliation, as I have determined that the allegations as they currently stand are sufficient to support such a claim.

### IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1) Defendant's Motion to Dismiss (DE 3) is **GRANTED IN PART AND DENIED IN PART.**

2) The Motion is **DENIED** as to Count I.

3) The Motion is **GRANTED** as to Count II insofar as Plaintiff sought to allege racial discrimination under 42 U.S.C. § 1981. The racial discrimination claim is dismissed without prejudice.

4) If Plaintiff wishes to file an Amended Complaint, she must do so on or by **January 31, 2025.** Plaintiff may amend the allegations in Count II only, and no authorization is given to expand the scope of this litigation by adding either new claims or new defendants without prior leave of court.

5) If no Amended Complaint is filed by the deadline set forth in this order, then the current Complaint will become the operative pleading in this matter, and the case will proceed as to Count I only.

**SIGNED** in Chambers in West Palm Beach, Florida, this ___ day of January, 2025.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

CC: Counsel of Record